1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYNDI WALTERS, an individual person,

Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF
CORRECTIONS; JOSEPH D. LEHMAN;
ELDON VAIL; ANNE L. FIALA; LYNNE
DELANO; MARJORIE LITTRELL; JAMES G.
BLODGETT, SR.; MARY SUTLIFF; and AMY
F. COOK,

Defendants.

CASE NO. C06-1448-JCC

ORDER

17

18

19

20

This matter comes before the Court on Defendant Mary Sutliff's Motion for Summary Judgment

(Dkt. No. 32), Plaintiff's Response (Dkt. No. 38), and Defendant's Reply (Dkt. No. 40). Having

considered the parties' briefing and supporting documentation, and determining that oral argument is

unnecessary, the Court hereby finds and rules as follows.

21   **I.   BACKGROUND**

22

23

24

25

26

Plaintiff Cyndi Walters, at all times relevant to this motion, was employed by Defendant

Washington State Department of Corrections ("DOC") as the State Director of the Staff Resource

Centers ("SRC"). (Am. Compl. ¶ 1 (Dkt. No. 2).) Plaintiff states that while performing in this capacity,

she also "counseled individual employees and managers as a Registered Counselor for the Washington

ORDER – 1

1

2 State Penitentiary and later the entire DOC Southeast Region . . . on critical incidents, individual stress,

3 and workplace issues." (*Id.* at ¶ 20.) All but one of the individually named Defendants were DOC

4 employees, and in particular, Defendant Mary Sutliff was the "Office Assistant Lead in the Walla Walla

5 Field Office of the DOC." (*Id.* at ¶ 3.) Ms. Sutliff's job assignment at the time in question was to provide

6 temporary clerical assistance to Plaintiff. (Def.'s Mot. 2 (Dkt. No. 32).)

7           For the purposes of this motion, a key set of events occurred in the aftermath of the arrest of

8 Defendant Joseph Lehman's[1] son for sexual assault. News of the arrest surfaced in February 2003,

9 around the time Plaintiff was in Olympia to attend several DOC management and SRC program-related

10 meetings. (Am. Compl. ¶¶ 46–47, 49 (Dkt. No. 2).) Upon hearing the news, Plaintiff claims that she went

11 to DOC headquarters "to promote the availability of the SRC's resources and to offer assistance dealing

12 with this development." (*Id.* at ¶ 49.) Pursuant to this objective, Plaintiff visited the DOC headquarters

13 building on February 6 and 7, where she inquired with Mr. Lehman's chief-of-staff as to his availability,

14 but did not meet with him. (*Id.* at ¶ 50.)

15           On February 10, 2003, a few days after her visit to Olympia, Plaintiff met with Defendant Mary

16 Sutliff to address problems with the telephone and computer equipment in Plaintiff's office. While the

17 parties agree that Plaintiff and Ms. Sutliff discussed the arrest of Defendant Lehman's son, their accounts

18 of the conversation differ greatly. Plaintiff claims that she was concerned with the communications

19 malfunction that day because "SRC and emergency response staff managers in Olympia may [have

20 needed] to contact her." (*Id.* at ¶ 59.) Plaintiff states that when the topic of the arrest came up, Ms.

21 Sutliff "seemed preoccupied," and told Plaintiff "that some WWFO staff thought that Secretary Lehman

22 should resign as a result of it." Plaintiff then allegedly asked Ms. Sutliff to distribute her contact

23 information to certain SRC staff and emergency response managers in the event they were to call. (*Id.*)

24 _____

25           [1] At the time, Defendant Joseph Lehman was Secretary and Chief Executive of the DOC. (Am.
Compl. ¶ 3 (Dkt. No. 2).)

26 ORDER – 2

1

2    Defendant Sutliff claims that during this encounter, Plaintiff "raised the topic of the arrest," "discussed

3    her recent trip to the Department headquarters in Olympia . . . and divulged the names of people in the

4    Department whom she counseled about the arrest." Ms. Sutliff also asserts that Plaintiff characterized

5    Defendant Lehman as being "in hiding." (Sutliff Decl. ¶ 3 (Dkt. No. 33).) Ms. Sutliff apparently could

6    never recall the specific names that Plaintiff allegedly divulged. (*Id*. at ¶ 4.)

7         On or about February 19, 2003, Defendant Sutliff sent an email to her supervisor, Hayley

8    Shepard, that expressed concern over the conversation she had with Plaintiff, characterizing the

9    discussion of Mr. Lehman's son as "inappropriate and unnecessary." (Sutliff Email (Dkt. No. 33 at 5).)

10   This email apparently sparked an investigation that led to Plaintiff's termination for violation of

11   confidentiality under DOC Policy 870.800. Plaintiff claims that the entire episode was manufactured by

12   Defendants to supply a pretextual basis for her firing. Plaintiff asserts that Ms. Sutliff was "recruited" to

13   help perform this task, and that she consulted with several other defendants before drafting her email,

14   which she was instructed to do for the purposes of documentation. (Am. Compl. ¶¶ 55, 63 (Dkt. No. 2).)

15   According to Plaintiff, this scheme to terminate her was  retaliation for two separate conflicts. First,

16   Plaintiff claims that she drew Defendants' ire by complaining about their inaction regarding the abusive

17   and hostile conduct of one of Plaintiff's subordinates. (*Id*. at ¶ 9.) Second, Plaintiff states that her

18   attempts to protect the confidentiality of DOC employees seeking counseling through the SRC provoked

19   Defendants into seeking her dismissal. (*Id*.) Finding it unnecessary for the present motion, Defendant

20   does not discuss in detail the basis for Plaintiff's dismissal. (*See* Def.'s Mot. 3 (Dkt. No. 32).) It does

21   appear, however, that in litigation in Thurston County Superior Court, a judge found Plaintiff's

22   termination erroneous in so far as it was premised upon DOC Policy 870.800. (Transcript (Dkt. No. 39 at

23   21–22).)

24        Defendant Sutliff now moves for summary judgment and dismissal with prejudice of all claims

25   against her. (Def.'s Mot. 1 (Dkt. No. 32).) This comes in response to the two claims Plaintiff has brought

26   ORDER – 3

1

2   against Defendant Sutliff specifically: (1) Violation of her procedural and substantive due process rights

3   under 42 U.S.C. § 1983 as a result of her termination, and (2) Violation of her procedural and substantive

4   due process rights under § 1983 as a result of an intentional "sham investigation." (Am. Compl. §§ 122-

5   138 (Dkt. No. 2).) Defendant argues first that she is entitled to immunity under Washington's Anti-

6   SLAPP statute, RCW 4.24.510, for communicating a matter of reasonable concern to the DOC. (*Id*. at

7   7–8.) Second, Defendant claims that she was not acting "under color of law" for the purposes of

8   Plaintiff's Section 1983 claims. (*Id*. at 8–9.) Third, Defendant asserts that she is entitled to judgment as a

9   matter of law on the issue of whether she violated Plaintiff's procedural and substantive due process

10   rights under the federal constitution. (*Id*. at 9–12.) Finally, Defendant argues that even if she did violate

11   Plaintiff's constitutional rights, she is nonetheless entitled to qualified immunity. (*Id*. at 12–14.) Plaintiff

12   disputes each of these assertions.

13   **II.      DISCUSSION**

14          **A.      Standard of Review**

15          Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories,

16   and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

17   material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c);

18   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). There is no genuine issue for trial unless

19   there is sufficient evidence to support a jury verdict in favor of the nonmoving party. *Anderson*, 477 U.S.

20   at 250. The moving party has the burden of demonstrating the absence of a genuine issue of material fact.

21   (*Id*. at 257.) Furthermore, the Court must draw all reasonable inferences in favor of the nonmoving party.

22   *See F.D.I.C. v. O'Melveny & Myers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512

23   U.S. 79 (1994).

24          In addition to demonstrating that there are no questions of material fact, the moving party must

25   also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Washington Law School*,

26   ORDER – 4

1

2   233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when

3   the nonmoving party fails to make a sufficient showing on an essential element of a claim for which the

4   nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

5   ## B.   Preliminary Issues

6   In her Reply, Defendant moves to strike Plaintiff's Response and Declaration as untimely. She

7   also moves to strike portions of the Declaration as "inadmissible opinion and speculation on ultimate

8   issues of fact," and portions of Plaintiff's "Statement of Facts" as unsupported by any evidence. (Def.'s

9   Reply 2–4 (Dkt. No. 40).) Regarding the timeliness of the Response, it appears that Plaintiff was indeed

10  three days late. *See* LOCAL CR 7(d)(3) ("Any opposition papers shall be filed and served not later than the

11  Monday before the noting date"). Defendant's frustration is especially justified due to the fact that

12  Defendant's counsel agreed to re-note the motion twice at Plaintiff's request in order to allow more time

13  for response. (Def.'s Reply 2 (Dkt. No. 40).) Nonetheless, the Court is not inclined to strike the

14  Response or Declaration, and thereby treat this as an unopposed dispositive motion, on this basis. While

15  the Court recognizes Defendant's professional courtesy in twice re-noting this motion, the prejudice

16  caused by Plaintiff's late filing, if any, appears to be minimal. However, Plaintiff can consider herself

17  warned that future transgressions will not be treated with such leniency.

18  As for Defendant's objections to the form and content of Plaintiff's Declaration and "Statement of

19  Facts," the Court is satisfied that it can distinguish assertions based on personal knowledge from those

20  that simply state a theory. Plaintiff is instructed, however, to comply with Rule 56(e) of the Federal Rules

21  of Civil Procedure for all future affidavits.

22  ## C.   Washington Anti-SLAPP Statute

23  Defendant alleges that she is entitled to immunity under Washington's Anti-SLAPP Statute for

24  reporting her concerns about Plaintiff to her DOC superiors. (Def.'s Mot. 7–8 (Dkt. No. 32).) Plaintiff

25  responds that the statute is not applicable here because it does not implicate a sufficiently compelling

26  ORDER – 5

public interest, and even if it were applicable, it is preempted by federal law. (Pl.'s Resp. 17–18 (Dkt. No.

38).) The statute in question reads, in part:

> A person who communicates a complaint or information to any branch or agency
> of federal, state, or local government . . . is immune from civil liability for claims
> based upon the communication to the agency or organization regarding any matter
> reasonably of concern to that agency or organization.

WASH. REV. CODE 4.24.510.

It is not necessary to determine how this statute applies to Defendant's actions, or whether

it is preempted by federal law, because the underlying premise of such questions requires that the

Court first adopt Defendant's version of the facts. This is an infirmity that recurs in several of

Defendant's arguments. Plaintiff alleges that Ms. Sutliff was recruited to help her co-defendants

manufacture a basis for Plaintiff's termination. Under this theory, Ms. Sutliff's email was not an

attempt to communicate a "matter reasonably of concern" to the DOC, but rather a document

drafted in consultation with her DOC superiors with the purpose of justifying Plaintiff's firing by

casting her in a false light. Under Plaintiff's version of the facts, the anti-SLAPP statute is simply

inapposite, and therefore Defendant cannot be entitled to "judgment as a matter of law." FED. R.

CIV. P. 56(c).

This is to say that there is a dispute of material fact; the question that Defendant's position

really implicates is whether the dispute is "genuine." In other words, has Plaintiff made the

threshold showing necessary to permit a rational trier of fact to find in her favor. The Court

concludes that she has. First, Plaintiff has apparently convinced a Thurston County Superior

Court that the stated reason for her firing was erroneous. While this fact, by itself, does not

confirm Plaintiff's account, it is consistent with her story. Second, Plaintiff has provided copies of

emails and transcripts that tend to support the inference that any such error was not made in good

faith. For example, in an email from Defendant Lynne DeLano to Defendant Marjorie Littrell on

ORDER – 6

1

2      February 12, 2003, DeLano apparently describes Plaintiff's trip to Olympia as follows:

3              Marge, here's more on the story. It seems [Plaintiff] Cyndi just volunteered to
        help. You may want to double check with J Hofe to see if Cyndi had any more
4       legitimate business in HQ after the OCOMT meeting, but I think not. I'd be
        curious to see if Cyndi claims additional hours of work during the time period.
5       (grrrrrrr!)

6      (Walters Decl. (Dkt. No. 39 at 6).) While certainly not the only possible inference, it would not be

7      irrational to view this correspondence as supporting Plaintiff's theory of the case, which is that

8      various DOC employees were actively pursuing a pretext to fire her based on her visit to DOC

9      headquarters in Olympia. Third, the transcript of Defendant's testimony in front of the Personnel

10     Appeals Board, at the very least, suggests that her recollection of the conversation she had with

11     Plaintiff is less than perfect. (*See* Walters Decl. (Dkt. No. 39 at 17–19).) On this point, it is also

12     undisputed that Defendant has never been able to recall the specific names that Plaintiff allegedly

13     disclosed,[2] which appears to have been one of, if not the most significant transgression alleged.

14     One interpretation of this record is that Defendant understandably forgot certain details that she

15     could not have been expected to fully remember. Another is that her email did not accurately

16     portray the conversation. In any case, there appears to be a genuine dispute of material fact that

17     the Court would have to ignore in order to address Defendant's legal argument. None of this is to

18     pass judgment on the weight of Plaintiff's evidence or her chance of ultimate success on the

19     merits; it is enough to say at this point that Plaintiff has shown enough to survive summary

20     judgment.

21

22
              [2] In her Reply, Defendant asserts that, at the very least, "plaintiff's declaration makes it clear that
23     she did mention names." (Def.'s Reply 5 (Dkt. No. 40).) This is potentially misleading, since Plaintiff
       quite clearly states that she "did not mention any name of any DOC employee for whom I had provided
24     confidential services." (Walters Decl. ¶ 5 (Dkt. No. 39).) It was the disclosure of people receiving
       counseling that purportedly concerned Defendant, and therefore it is of no import for her to observe that
25     Plaintiff simply named people who she thought might try to call her.

26     ORDER – 7

1

2     **D.      Qualified Immunity**

3          Defendant argues that even if she violated Plaintiff's constitutional rights, she is entitled to

4     qualified immunity for her actions. (Def.'s Mot. 12–14 (Dkt. No. 32).) Under the doctrine of

5     qualified immunity, the threshold question is: "[t]aken in the light most favorable to the party

6     asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional

7     right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer to this question is no, the inquiry

8     need not proceed further. If the answer is yes, the next question is "whether the right was clearly

9     established. This inquiry, it is vital to note, must be undertaken in light of the specific context of

10    the case . . ." (*Id.*)

11         Defendant first argues that no constitutional right was violated and therefore the Court

12    should proceed no further than the threshold inquiry. (Def.'s Mot. 14 (Dkt. No. 32).) As

13    Defendant addresses this question more comprehensively elsewhere in her briefing, the Court will

14    postpone its consideration for now. Defendant also argues that even if she violated Plaintiff's

15    constitutional rights, they were not "clearly established" at the time. (*Id.*; Def.'s Reply 9–10 (Dkt.

16    No. 40).) Her rationale is that a reasonable person in Defendant's position would infer from

17    Washington's anti-SLAPP statute that her actions were legal, even if they were not.

18         This analysis dovetails with the discussion in Section C, above, and fails for the same

19    reason. In characterizing her actions, Defendant expressly relies on her own version of the facts,

20    which are that she was merely a concerned employee rather than part of a concerted effort to

21    discredit and dismiss Plaintiff from her job. While this may very well have been the case, it is a

22    narrative directly at odds with Plaintiff's allegations. Perhaps recognizing this, Defendant also

23    asserts that "there is no evidence of any conspiracy between Ms. Sutliff and any other

24    defendants," (Def.'s Mot. 14 (Dkt. No. 32)), which is to say that the factual dispute is not

25    "genuine." For the reasons set forth above, the Court disagrees, and therefore Defendant is not

26    ORDER – 8

1

2    entitled to qualified immunity on this basis.

3         **E.        "Under Color of Law"**

4         Defendant contends that she was not acting "under color of law" for the purposes of

5    Plaintiff's Section 1983 claims. In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff

6    must show that the action complained of was "under color of law," and that it resulted in the

7    deprivation of a federal constitutional or statutory right. *McDade v. West*, 223 F.3d 1135, 1139

8    (9th Cir. 2000). The underlying purpose that the statute serves is "to deter state actors from using

9    the badge of their authority to deprive individuals of their federally guaranteed rights." (*Id.*) The

10   phrase "badge of their authority" evokes the area of law enforcement, which is frequently the

11   context for claims under § 1983. *See*, *e.g.*, *Gritchen v. Collier*, 254 F.3d 807 (9th Cir. 2001); *Van*

12   *Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996). However, the protection under the

13   statute is not limited to the actions of such authority figures. *See*, *e.g.*, *McDade*, 223 F.3d 1135.

14   And while the meaning of the phrase "under color of law" is context-dependent, "[i]t is firmly

15   established that a defendant in a § 1983 suit acts under color of state law when he abuses the

16   position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49–50 (1988). It is even the case

17   that a private party can act "under color of law" if it functions according to a "symbiotic"

18   relationship with the state. *See Brunette v. Humane Society of Ventura County*, 294 F.3d 1205,

19   1213 (9th Cir. 2002).

20        Defendant argues that she did not act "under color of law" because her power to report

21   her concerns was not possessed by virtue of state law, was not made possible because of her

22   employment, and did not result from abuse of her position. (Def.'s Mot. 8–9 (Dkt. No. 32).)

23   Plaintiff responds that Defendant actively participated in a campaign to terminate her, and

24   therefore acted "under color of law." (Pl.'s Resp. 18–19 (Dkt. No. 38).)

25        Defendant's arguments notwithstanding, it is clear that under Plaintiff's theory of the case,

26   ORDER – 9

1

2   Defendant acted "under color of law." Defendant relies heavily on her modest position of

3   authority to argue that she "was not a state actor." (Def.'s Reply 7 (Dkt. No. 40).) However, she

4   cites no authority that stands for the proposition that a state employee acting under the auspices

5   of her job to deprive another of a constitutional right does not act "under color of law" merely

6   because of the limited authority of her position. Rather, the question is whether that person "is

7   acting, purporting, or pretending to act in the performance of his or her official duties." *McDade*,

8   223 F.3d at 1140. Defendant also appears to be under the mistaken impression that "under color

9   of law" means that the offending acts are traceable to a particular piece of state legislation: "It is

10  telling that plaintiff does not even cite to the state law under which Ms. Sutliff purported acted."

11  (Def.'s Reply 7 (Dkt. No. 40).) The protection under 42 U.S.C. § 1983 has never been limited to

12  conduct that violates the Constitution and yet is somehow compelled by express provision of state

13  law. The very point of the statute is often to provide a remedy for entirely extralegal conduct at

14  the hands of a state actor. *See*, *e.g.*, *Screws v. United States*, 325 U.S. 91, 108 (1945).

15        In considering the facts of the present case, *McDade* is particularly instructive. There, the

16  Ninth Circuit confronted the then-novel question of "whether a state employee who accesses

17  confidential information through a government-owned computer database acts 'under color of

18  state law.'" *McDade*, 223 F.3d at 1139. The Court found in the affirmative, reasoning that

19  "[b]ecause Ms. West's status as a state employee enabled her to access the information, she

20  invoked the powers of her office to accomplish the offensive act. Therefore, however improper

21  Ms. West's actions were, they clearly related to the performance of her official duties." (*Id*.)

22  Plaintiff's position in the present case is that Defendant was recruited and utilized to provide a

23  false and pretextual basis for dismissal, all under the auspices of providing clerical support. There

24  can be no question that under this theory of the case, Defendant acted "under color of law" for

25  the purposes of liability under § 1983.

26  ORDER – 10

1

2      **F.      Violation of Due Process Resulting from Termination**

3              i.        Procedural Due Process

4      Plaintiff alleges that Defendant Sutliff, as well as several other Defendants, violated her

5 constitutional right to procedural due process by conspiring to terminate her. (Am. Compl. ¶¶

6 122–129 (Dkt. No. 2).) In order to sustain a due process claim under § 1983 in the employment

7 context, a plaintiff must demonstrate: (1) the deprivation of a constitutionally-cognizable property

8 interest in continued employment, and (2) lack of adequate procedural protections. *See Huskey v.*

9 *City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2000). Constitutionally-cognizable property

10 interests "are not created by the Constitution," but rather "stem from an independent source such

11 as state law . . ." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). As for

12 the type and amount of process owed, courts consider the following three factors:

13          First, the private interest that will be affected by the official action; second, the risk
            of an erroneous deprivation of such interest through the procedures used, and the
14          probable value, if any, of additional or substitute procedural safeguards; and
            finally, the Government's interest, including the function involved and the fiscal and
15          administrative burdens that the additional or substitute procedural requirement
            would entail.
16
*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). In the area of public employment, constitutional
17
due process "requires 'some kind of a hearing' prior to the discharge of an employee who has a
18
constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v.*
19
*Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Roth*, 408 U.S. at 569–70).
20
       In her motion, Defendant Sutliff argues that even assuming Plaintiff had a cognizable
21
property interest, Defendant's position as an administrative assistant gave her no control over the
22
process afforded to Plaintiff. (Def.'s Mot. 9–10 (Dkt. No. 32).) In response, Plaintiff emphasizes
23
Defendant's role in the larger scheme, without citing any legal authority whatsoever. (Pl.'s Resp.
24
19–20 (Dkt. No. 38).)
25

26 ORDER – 11

1

2    Neither party in this case has presented facts as to whether Plaintiff had a constitutionally-

3  cognizable interest in continued employment, and therefore the Court is unable to consider that

4  question now. As for the adequacy of process, Defendant mostly declines to address this question

5  as well, stating only in her Reply that various administrative and judicial proceedings attest to the

6  fact that Plaintiff "has been afforded nothing but process." (Def.'s Reply 8 (Dkt. No. 40).) On this

7  point, Defendant appears to misapprehend the meaning of "process" in this context. It is no

8  answer to say that an injured party's right to bring a lawsuit, in itself, cures any defect in the

9  process by which she was deprived of a constitutional right to continued employment. The entire

10  point of the pre-deprivation hearing discussed in *Loudermill* and *Roth* is to avoid such injury in

11  the first place.

12    Defendant's argument rests primarily on the notion that even if Plaintiff had a cognizable

13  property interest, and even if she was afforded inadequate process, Ms. Sutliff simply was not in a

14  position to inflict the injury. As Defendant argues, "Ms. Sutliff had no involvement in the decision

15  to discipline or terminate plaintiff, nor did she have any involvement in the procedural protections

16  the Department provided to Plaintiff." (Def.'s Mot. 10 (Dkt. No. 32).) Once again, this argument

17  ignores Plaintiff's theory of the case. According to Plaintiff, Defendant did more than simply draft

18  an email of concern; she participated in a collaborative process to discredit Plaintiff and lay the

19  groundwork for her dismissal. No one disputes that Ms. Sutliff had no authority to make the

20  termination decision personally. However, Defendant cites no authority for the idea that she must

21  singlehandedly participate in each and every phase of the constitutional violation in order to be

22  liable under § 1983. If that were the case, none of the individual Defendants would seem to be

23  liable, as no one person was able to inflict all of the harm alone.

24    ii.    Substantive Due Process

25    Plaintiff also brings the claim that her termination violated her substantive due process

26  ORDER – 12

1

2    rights under the federal Constitution. (Am. Compl. ¶ 127 (Dkt. No. 2).) "Substantive due process

3    protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*,

4    451 F.3d 982, 991 (9th Cir. 2006). To state a cognizable claim, the conduct complained of must

5    "shock the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Accordingly,

6    the Supreme Court has "made it clear that the due process guarantee does not entail a body of

7    constitutional law imposing liability whenever someone cloaked with state authority causes harm."

8    (*Id.* at 848.)

9          Defendant moves for summary judgment on this issue, claiming first that the evidence

10   supporting Plaintiff's theory is insufficient, and second, that even if true, such conduct fails to

11   "shock the conscience." (Def.'s Mot. 10–12 (Dkt. No. 32).) Plaintiff responds by asserting that

12   material issues of fact preclude summary judgment. (Pl.'s Resp. 19–20 (Dkt. No. 38).)

13         Unlike most of the foregoing arguments, this issue does not turn on whose story the Court

14   adopts. Defendant argues that even if everything Plaintiff says is true, her conduct does not rise to

15   a level of constitutional import. The Court agrees. It is not sufficient that Defendant may have

16   acted vindictively, participating in a scheme to get Plaintiff fired. While such conduct may be

17   actionable under other theories of recovery, substantive due process under the Fourteenth

18   Amendment deals with government action that "interferes with rights 'implicit in the concept of

19   ordered liberty. . .'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Palko v.

20   Connecticut*, 302 U.S. 319, 325–26 (1937). Without seeking to belittle whatever harm Plaintiff

21   may have suffered, the Court concludes that Defendant's conduct does not rise to a level that

22   "shocks the conscience." To find otherwise in this case would be to contravene the Supreme

23   Court's admonition that the Fourteenth Amendment not become a "font of tort law to be

24   superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*,

25   424 U.S. 693, 701 (1976).

26   ORDER – 13

**G.      Violation of Due Process Resulting from Investigation**

i.      Procedural Due Process

The parties have grouped their respective discussions of procedural due process together, rather than differentiating Plaintiff's claim arising out of her termination from her claim arising out of what she calls a "sham investigation." To the extent Defendant moves for summary judgment on the latter based on the limited authority of her position, it fails for the reasons set forth above.

ii.      Substantive Due Process

For the reasons set forth in Section F(ii) above, this claim must also fail, and therefore Defendant is entitled to summary judgment on this issue.

**III.      CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 32) is DENIED in part, and GRANTED in part. Specifically, Defendant's Motion is denied with respect to all issues except Plaintiff substantive due process claims, which are dismissed with respect to Defendant Sutliff.

SO ORDERED this 25th day of February, 2008.

John C. Coughenour
United States District Judge

ORDER – 14