The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CYNDI WALTERS, an individual person,

Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF CORRECTIONS; JOSEPH D. LEHMAN; ELDON VAIL; ANNE L. FIALA; LYNNE DELANO; MARJORIE LITTREL; JAMES G. BLODGETT, SR.; MARY SUTLIFF; and AMY F. COOK,

Defendants.

Case No. C06-1448-JCC

ORDER GRANTING DEFENDANT AMY COOK'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Amy Cook's Motion for Summary Judgment (Dkt. No. 53) and Plaintiff's Motion to Continue Defendant's Motion for Summary Judgment (Dkt. No. 60). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Plaintiff's motion to continue and GRANTS Ms. Cook's motion for summary judgment for the reasons explained herein.

ORDER
PAGE - 1

## I. BACKGROUND

From 1998 until 2003, Plaintiff Cyndi Walters was employed by the Washington State Department of Corrections ("DOC") as a Staff Counselor and as the State Director for the Staff Resource Centers ("SRC"). (Am. Compl. ¶ 1 (Dkt. No. 2 at 1).) This case primarily concerns Plaintiff's alleged wrongful termination from DOC. (*Id.* ¶¶ 122–183.) On May 28, 2009, the Court granted partial summary judgment for Defendants and, in so doing, dismissed all of Plaintiff's claims except for those against Defendant Amy Cook. (Dkt. No. 65.) This motion addresses the remaining claims.

Plaintiff's relationship with Ms. Cook began in August 2002. The month prior, Glenn Johnson, an occupational nurse at DOC, filed a petition in Walla Walla County District Court (1) accusing Plaintiff, his then-supervisor, of harassment and (2) seeking a restraining order against her. (Harassment Pet. (Dkt. No. 54 at 6–14).) Ms. Cook, an Assistant Attorney General with the Washington State Attorney General's Office ("AG's office"), appeared and filed an amicus brief on behalf of DOC, arguing that Plaintiff's conduct did not amount to harassment. (*See* Amicus Br. 4 (Dkt. No. 54 at 19).) On August 21, 2002, Plaintiff requested individual defense by the AG's office in the action (Dkt No. 54 at 40), and Ms. Cook subsequently appeared on her personal behalf (*id.* at 43). The dispute was ultimately resolved in mediation and, on September 19, 2002, the parties stipulated that the joint anti-harassment order be terminated. (*Id.* at 52–54.) The mediation agreement specified that the work status would be reviewed after six months; when Plaintiff asked Ms. Cook who would take part in that meeting, Ms. Cook replied that she would "ask Bobbi [Collins] to monitor how things go, and put together the group for review at the six month mark." (9/19/02 E-mails (Dkt. No. 54-2 at 2).)

Plaintiff and Ms. Cook were also both involved in a separate action, when Mr. Johnson filed a lawsuit against DOC in Thurston County Superior Court. (Thurston Reply Br. 4 (Dkt. No. 54-2 at 7).) Back in September 2001, Mr. Johnson requested that DOC provide him with

his supervisory file. (*Id.* at 2.) DOC provided him with the requested file but withheld certain documents in an attempt to comply with Washington state law regarding privileged communications. (*Id.* at 4.) The withheld documents were apparently in the possession of Plaintiff, who at the time was still Mr. Johnson's supervisor. (*Id.*) In June 2002, Mr. Johnson appealed DOC's decision to withhold these documents to the superior court, but he failed to serve notice of the appeal on DOC until October 11, 2002. (*Id.* at 5.) At that point, Ms. Cook became involved with the case on behalf of DOC. (*See id.*) After receiving clarification about the specific documents sought by Mr. Johnson, several DOC employees attempted to convince Plaintiff to locate and produce the missing records, but she refused to cooperate. (*Id.* at 9.) On April 22, 2003, Lynne DeLano, Assistant Deputy Secretary of DOC, specifically directed Plaintiff to produce several requested e-mails or verify that they could not be located. (Dkt. No. 54-2 at 27–28.) After further intransigence on Plaintiff's part, Ms. DeLano issued a formal letter reprimanding Plaintiff for her "lack of candor," "deliberate[] evasive[ness]," and her "dishonest[y]" in the matter. (*Id.* at 46–48.)

In February 2003, Plaintiff had a conversation with another DOC employee in which she made several statements that were later found to violate DOC's confidentiality policy. (*See* Employee Conduct Report (Dkt. No. 57 at 10).) This violation ultimately led to her official termination on September 22, 2003, after an extensive investigation process. (9/22/03 Final Termination Letter 1 (Dkt. No. 57 at 22).) The complete details of Plaintiff's termination, and her allegations of a massive conspiracy against her, are fully documented in the Court's previous order granting partial summary judgment and are not repeated here. (*See* Dkt. No. 65.)

At one point during the investigation as to her breach of confidentiality, Plaintiff requested to speak with counsel at the AG's office about their interpretation of the DOC's confidentiality policy, but she was informed by one of the Assistant Attorney Generals that they could not discuss the matter with her because they provided legal advice to her supervisor,

Ms. DeLano. (7/14/03 E-mails 2 (Dkt. No. 54-2 at 51).) In response, Plaintiff wrote to Ms. DeLano and others that she was "curious why the AGs are unable to advise [me] on the issue of confidentiality. Before 'they' were working with Ms. DeLano, Ms. Cook was assigned to represent and advise me on Program/staff issues." (*Id.* at 1.) She continued that "[i]t seems like a conflict of interest for Ms. Cook to assist Ms. DeLano when she was previously assigned to assist me personally." (*Id.*) Marjorie Littrell, the DOC Southeast Regional Administrator, responded that "Amy Cook was not assigned to work with you for anything other than the restraining order issue with Glenn Johnson last year. Once the mediation and settlement were completed, her representation of you ended." (*Id.*)

On July 15, 2003, Plaintiff filed a written "grievance" alleging, in part, "[a] conflict of interest with Amy Cook representing Lynne DeLano, Marge Littrell, and [Plaintiff]." (10/3/03 Glasper Letter 1 (Dkt. No. 54-2 at 60).) In this grievance, she apparently argued that "the mediation process [of the restraining order dispute] had not ended and thus Ms. Cook's representation of [Plaintiff] had also not ended." (*Id.* at 2.) Marcus Glasper, Assistant Deputy Secretary of the Office of Administrative Services, reviewed the grievance and found that Ms. Cook's representation of Plaintiff had ended on September 19, 2002, and that no conflict of interest arose from Ms. Cook's subsequent involvement in the appeal of Mr. Johnson's public records request. (*Id.* at 2–3.) On October 27, 2003, Plaintiff appealed Mr. Glasper's denial of her grievance to then-Secretary of DOC, Joseph Lehman, and complained that "Ms. Cook unethically advised Ms. DeLano and Ms. Littrell when her obligation remained with me . . . ." (Grievance Appeal (Dkt. No. 54-2 at 64–67).) On December 5, 2003, Eldon Vail, Deputy Secretary, wrote to Plaintiff that he "d[id] not see that a conflict of interest occurred." (12/5/03 Vail Letter (Dkt. No. 54-2 at 69).)

Plaintiff initiated the instant action on October 5, 2006. (*See* Compl. (Dkt. No. 1).) Her initial complaint named the DOC and seven DOC employees as defendants and alleged a comprehensive conspiracy against Plaintiff to fabricate evidence against her, terminate her

ORDER
PAGE - 4

without cause, and deprive her of her due process rights at every stage of review. (*See id.*) On November 1, 2006, Plaintiff amended her complaint, adding Ms. Cook as a defendant and alleging two claims against her. (Am. Compl. (Dkt. No. 2).) First, Plaintiff alleges that Ms. Cook took part in the conspiracy with other DOC employees "to execute the wrongful termination and career-ending defamation of Plaintiff." (*Id.* ¶ 180.) Second, Plaintiff alleges that Ms. Cook violated the Washington Rules of Professional Conduct "by representing another person in the same or a substantially related matter with interests materially adverse to those of [Plaintiff, her] former client" and by "us[ing] confidences obtained from [Plaintiff] to support disciplinary charges against [Plaintiff]." (*Id.* ¶ 37.) Plaintiff claims that she "did not learn of [Ms.] Cook's betrayal and violation of professional ethics until her new attorneys were provided documents by the [AG's office] in 2006 . . . ." (*Id.*)

On May 28, 2009, this Court granted Defendants' Motion for Partial Summary Judgment. (*See* Order Granting Partial Summ. J. (Dkt. No. 65).) The Court dismissed most of Plaintiff's claims on the grounds that they were collaterally estopped in light of prior decisions in the Personnel Appeals Board ("PAB") and the state court of appeals. (*See id.* at 11–19.) The Court also dismissed Plaintiff's defamation and procedural and substantive due process claims because no genuine issues of material fact existed and Defendants were entitled to judgment as a matter of law. (*See id.* at 20–25.) After the Court's order, the only remaining claims in the case were those against Ms. Cook. (*See* Order Granting Partial Summ. J. 10 n.1 (Dkt. No. 65).)

Ms. Cook separately moves for summary judgment on the ground that Plaintiff's claims against her are barred by the applicable three-year statute of limitations. (Mot. for Summ. J. 1–2 (Dkt. No. 53).) Ms. Cook argues that Plaintiff was plainly aware of the elements of her claims against Ms. Cook by the time she filed her grievance on July 15, 2003, and so Plaintiff's amended complaint, filed November 1, 2006, falls outside of the period of limitations. (*Id.* at 10–11.) Ms. Cook notes that she left the AG's office on August 13, 2003, to go on active duty with the Washington National Guard, and officially resigned from her position with the AG's

office before returning from active duty (*see* LaRose Decl. ¶ 3 (Dkt. No. 63 at 2)); therefore, she argues that August 13, 2003, is the "absolute latest date on which the statute of limitations could start running." (Resp. to Mot. to Continue 4 (Dkt. No. 62).)

Plaintiff failed to respond to Ms. Cook's motion for summary judgment, apparently conceding that the record as it stands contains no genuine issues of material fact as to any wrongdoing on Ms. Cook's part after November 1, 2003. *See* Local Rules W.D. Wash. CR 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."). Instead, Plaintiff moves to continue Ms. Cook's summary judgment motion "on the grounds that [Plaintiff] has not completed discovery specifically related to [Ms.] Cook's participation in the conspiracy to deprive [Plaintiff] of civil rights." (Mot. to Continue 1 (Dkt. No. 60).) Plaintiff "believe[s] and allege[s] that [Ms.] Cook and another Assistant Attorney General worked together in preparing the file to discharge [Plaintiff] and fully participated in the decision to terminate [Plaintiff's] employment. [Ms.] Cook may have also advised and consulted Defendants during the PAB proceeding, continuing the breach of fiduciary duty." (*Id.* at 2.) Plaintiff contends that she should be allowed to depose Ms. Cook and Assistant Attorney General Valerie Petrie in order to further develop her claims. (*Id.* at 2–3.)

## II. DISCUSSION

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists only when, viewing the evidence in the light most favorable to the non-moving party, a reasonable jury could return a verdict for that party. *In re Caneva*, 550 F.3d 755, 761 (9th Cir. 2008) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The statute of limitations for a legal malpractice action in Washington is three years." *Huff v. Roach*, 106 P.3d 268, 269 (Wash. Ct. App. 2005) (*citing* WASH. REV. CODE § 4.16.080(3)). The statute of limitations begins to accrue when the client discovers, or in the exercise of reasonable diligence should have discovered, the facts which give rise to the cause of action, regardless of whether the client is actually aware at that time that a legal cause of action exists. *Id.*

Plaintiff's civil conspiracy claim is brought under 42 U.S.C. § 1983, which does not contain its own statute of limitations. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Instead, the Court must apply Washington's statute of limitations for personal injury actions, which is also three years. *Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989).

### A. Plaintiff's Motion to Continue for Further Discovery

Federal Rule of Civil Procedure 56(f) allows a court to continue a motion for summary judgment "if a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." In order to be eligible for relief under Rule 56(f), "the requesting party must show (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Moreover, the requesting party is not entitled to relief under Rule 56(f) if she failed to diligently pursue discovery before the summary judgment motion. *Id.* (*citing Mackey v. Pioneer Nat. Bank*, 867 F.2d 520, 524 (9th Cir. 1989)).

In this case, Plaintiff seeks to (1) depose Ms. Cook, (2) depose Ms. Petrie, and (3) seek production of "[a]ll communications by and between [Ms.] Cook and Defendants and the [AG's office] related to the investigation, dismissal and subsequent prosecution of the case against [Plaintiff]." (Mot. to Continue 3 (Dkt. No. 60).) Plaintiff suggests, without any support, that the discovery will show that Ms. Cook and Ms. Petrie "prepar[ed] the file to discharge

[Plaintiff] and fully participated in the decision to terminate [Plaintiff's] employment." (*Id.* at 2.) Plaintiff further speculates that Ms. Cook "may have also advised and consulted Defendants during the PAB proceeding, continuing the breach of fiduciary duty." (*Id.*)

Plaintiff claims that "it would be unfair and prejudicial . . . to deny her the opportunity to" conduct the requested discovery because the case was previously stayed pending the resolution of the concurrent state proceedings. (*Id.* at 3–4.) This claim blatantly misrepresents the record, which demonstrates that Plaintiff has had ample opportunity to conduct any necessary discovery.

Plaintiff's amended complaint was filed on November 1, 2006. (Dkt. No. 2.) On March 27, 2007, the parties met for a status conference before this Court, which set a trial date of June 16, 2008. (Dkt. No. 28.) This district's local rules specify that all discovery procedures must be exhausted no later than 120 days prior to the trial date, Local Rules W.D. Wash. CR 16(f), which in this case was Monday, February 19, 2008. *See* FED. R. CIV. P. 6(a). *On the day that discovery was set to close*, the parties filed a stipulation and proposed order to strike the trial date and discovery cutoff in light of the ongoing related state law action. (Stipulation (Dkt. No. 41).) On the following day, in response to this stipulation, the Court struck the trial date and all trial-related deadlines. (2/20/08 Minute Order (Dkt. No. 42).) Once the state court of appeals upheld Plaintiff's termination, Defendants moved for partial summary judgment (Dkt. No. 48), but, at Plaintiff's request and in consideration of her interests, the Court continued that motion and re-opened discovery for one month (Dkt. No. 51). Despite the fact that Plaintiff has requested this continuance, she does not appear to have conducted *any* discovery during the window that the Court provided. (*See* Resp. to Mot. to Continue 5 (Dkt. No. 62).)

Plaintiff had at least eleven months in which to conduct discovery before the case was stayed on the eve of the discovery cutoff. (Stipulation (Dkt. No. 41).) Had the Court denied the parties' request to stay the case and proceeded with the June 16, 2008, trial date, Plaintiff would have been limited to the record that she had developed up until that point. Accordingly,

ORDER
PAGE - 8

if Plaintiff needed to depose Ms. Cook or Ms. Petrie in order to develop her claims against Ms. Cook, she was fully on notice that she needed to conduct the relevant discovery before February 19, 2008. Plaintiff had ample opportunity to investigate her claims against Ms. Cook before the case was stayed, but, for whatever reason, she did not avail herself of this opportunity. Moreover, Plaintiff had an additional chance to conduct relevant discovery when the Court re-opened the matter for one month after the state court of appeals issued its ruling (Minute Order (Dkt. No. 51)); however, she again declined to pursue any investigation. (*See* Resp. to Mot. to Continue 5 (Dkt. No. 62).) It is clear that Plaintiff has failed to diligently pursue the requested discovery before summary judgment; accordingly, she is not entitled to a continuance under Rule 56(f). *See Mackey*, 867 F.2d at 524.

Moreover, even if Plaintiff had not squandered each of her previous opportunities to conduct the requested discovery, the Court is still unconvinced that a continuance would be appropriate. There is absolutely no evidence in the record to suggest that Ms. Cook was involved in Plaintiff's termination or played any role in either of the relevant DOC legal disputes in the three years prior to Plaintiff's filing of this action. (*See* LaRose Decl. ¶ 3 (Dkt. No. 63).) Plaintiff alleges her belief that Ms. Cook's participation in these matters was ongoing, but she provides no basis for these beliefs. (*See* Rose Decl. ¶ 3 (Dkt. No. 61).) As a result, Plaintiff has failed to "show [that] the specific facts [she] hopes to elicit from further discovery [actually] exist," *Family Home & Fin. Ctr., Inc.*, 525 F.3d at 827, and her motion to continue (Dkt. No. 60) is therefore DENIED.

### B. Application of the Statute of Limitations

As described above, Plaintiff has failed to respond to Ms. Cook's motion for summary judgment, which the Court considers to be an admission that the motion has merit. Local Rules W.D. Wash. CR 7(b)(2); *see also* FED. R. CIV. P. 56(e)(2) ("If the opposing party does not [appropriately] respond, summary judgment should, if appropriate, be entered against that party."). The only evidence in the record that even plausibly supports either of Plaintiff's

claims against Ms. Cook involves her dual roles as Plaintiff's counsel in the restraining order suit (*see* Notice of Appearance (Dkt No. 54 at 43)) and as DOC's counsel in the appeal of Mr. Johnson's public records request (*see* Thurston Reply Br. 4 (Dkt. No. 54-2 at 7)). On July 15, 2003, Plaintiff filed a formal grievance alleging that these dual roles constituted a conflict of interest for which Ms. Cook should be sanctioned. (*See* 10/3/03 Glasper Letter 1 (Dkt. No. 54-2 at 60).) It is clear, therefore, that Plaintiff was aware of each of the relevant facts in the record more than three years before filing this lawsuit; accordingly, her claims against Ms. Cook are barred by the statute of limitations.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to continue (Dkt. No. 60) is DENIED and Ms. Cook's motion for summary judgment (Dkt. No. 53) is GRANTED. Plaintiff's claims against Ms. Cook are DISMISSED with prejudice.

DATED this 18th day of June, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE